UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSHUA FORSTER,

Plaintiff,

v.

STEPHANIE CLENDENIN, et al.,

Defendants.

Case No.: 1:25-cv-01053-CDB

**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

(Doc. 24)

**FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS**

(Doc. 12)

14-Day Objection Period

Clerk of the Court to Assign District Judge

Plaintiff Joshua Forster, a civil detainee, is appearing pro se and *in forma pauperis* in this civil rights action. Following screening, this action proceeds against Defendants Clendenin, Wallace, and Van de Putte.

## I. RELEVANT BACKGROUND

On March 6, 2026, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Doc. 12.) Plaintiff opposed (Doc. 14) and Defendants replied (Doc. 22).

Shortly after the motion was fully briefed, Plaintiff filed a notice of supplemental

authority in support of his opposition. (Doc. 23.) On April 30, 2026, Defendants filed objections to and moved to strike Plaintiff's supplemental authority. (Doc. 24.) Plaintiff opposed (Doc. 25) and Defendants replied (Doc. 26).

## II. STANDARDS APPLICABLE TO THE MOTION TO DISMISS

### *Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action. When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden of establishing that such jurisdiction does in fact exist. *Thornhill Publ'g Co.*, 594 F.2d at 733.

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

To maintain a lawsuit in federal court, a plaintiff must have standing. *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 101 (1983). Standing is a judicially created doctrine that is an essential part of Article III's case-or-controversy requirement. *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796 (9th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 70 (1983); *see Lujan*, 504 U.S. at 560-61; *Oliver v. Ralphs Grocery Co*., 654 F.3d 903, 907 (9th Cir. 2011) ("The irreducible constitutional minimum of standing includes three elements: (1) injury in fact; (2) causation; and (3) redressibility"). Standing is determined by the facts in existence at the time the complaint is filed. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

***Rule 12(b)(6) of the Federal Rules of Civil Procedure***

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

## III. SUMMARY OF THE PARTIES' BRIEFING

***Defendants' Motion to Dismiss***

Defendants move pursuant to Rule 12(b)(1) to dismiss the Fifth and Fourteenth Amendment claims of Plaintiff's complaint asserting for lack of subject matter jurisdiction. They contend Plaintiff has not suffered an injury in fact and thus lacks standing because he does not have a legally protected interest in sex offender treatment, including treatment without Penile Plethysmorgraph (PPG) and polygraph assessments. Alternatively, Defendants argue any alleged injury in fact is based on speculative contingencies, including his being found at trial to be a Sexually Violent Predator (SVP) and indefinitely committed to the Department of State Hospitals (DSH), being required to undergo PPG and polygraph assessments, being asked incriminating questions, making an incriminating statement and the government deciding to use it against him in a criminal proceeding, or refusing to answer and having his confinement prolonged as a result of his refusal to answer.

Additionally, Defendants move pursuant to Rule 12(b)(6) to dismiss the complaint for Plaintiff's failure to state a claim, contending the use of PPG and polygraph assessments in the SOTP does not violate Plaintiff's Fifth Amendment rights because he has not made any incriminating statement and the government has not decided to use the statement in a criminal proceeding. Next, Defendants argue Plaintiff's Fourteenth Amendment due process claim fails because as a pretrial SVP, he is not legally entitled to receive sex offender treatment. In the alternative, Defendants contend the use of PPG and polygraph assessments is not punitive and does not violate Plaintiff's due process rights because it furthers the legitimate governmental interest in preventing the re-offense of sex crimes.

***Plaintiff's Opposition***

Plaintiff argues he has a legally protected constitutional interest in adequate treatment, independent of any statutory entitlement under state law, because he is a participant in the SOTP. He maintains his injuries are actual and ongoing and not speculative: Plaintiff is confined at CSH, enrolled in SOTP, endured "five years of actual treatment delay directly caused by the assessment requirement," and has been advised that completion of the polygraphs is required. Further,

Plaintiff argues he has stated a cognizable Fifth Amendment claim because the right not to be compelled to make incriminating statements is prophylactic and Defendants' reliance on *Chavez v. Martinez*, 538 U.S. 760 (2003) is misplaced. He maintains the penalty he has suffered — five years of stalled treatment and prolonged confinement — is compulsion, that he has a right not to be compelled to reveal the contents of his mind, and that the use of the assessments at issue here affects his liberty. Next, Plaintiff argues the PPG and polygraph assessments are punitive and do not advance a legitimate governmental interest sufficient to overcome his constitutional rights. Lastly, Plaintiff contends the Court's screening order is entitled to weight and that Defendants' arguments have been repeatedly rejected by this Court.

In conclusion, Plaintiff asks this Court to deny Defendants' motion in its entirety. Alternatively, if the Court were to find any deficiency in the pleadings, Plaintiff asks to be given leave to amend his complaint.

***Defendants' Reply***

Defendants' reply argues that: (1) Plaintiff has failed to establish that he has a Fourteenth Amendment right to sex offender treatment such that he has standing to bring his Fifth and Fourteenth Amendment claims; (2) even if Plaintiff has a legally protected right to treatment, he lacks standing because his purported injury is speculative; (3) Plaintiff fails to state a cognizable Fifth Amendment claim because he has not made an incriminating statement and the government has not used a statement against him; and (4) Plaintiff fails to state a cognizable Fourteenth Amendment claim because as a pre-trial SVP he does not have a liberty interest in sex offender treatment.

***Plaintiff's Notice of Supplemental Authority***

Plaintiff asks the Court to consider the Objections filed in *Stephenson, et al. v. Clendenin, et al.*, No. 2:22-cv-1521-DAD-JDP, because Defendants' reply relies upon the Findings and Recommendations issued in that action for the proposition that pretrial SVP detainees do not have a right to sex offender treatment and that his Fourteenth Amendment claim should be dismissed.

***Defendants' Objection to and Motion to Strike Plaintiff's Notice***

Defendants contend that because Plaintiff's notice of supplemental authority does not

contain a citation to a relevant judicial opinion issued after the filing of Plaintiff's opposition, but rather introduces new argument on the motion, the filing violates Local Rule 230(m)(2) and should be stricken.

***Plaintiff's Opposition to Defendants' Objection and Motion to Strike***

Acknowledging that his notice of supplemental authority does not satisfy "the technical requirements of Local Rules 230(m)(2)," Plaintiff asserts that, properly construed, his filing is "an Objection to Reply Evidence under Local Rule 230(m)(1) because Defendants introduced the *Stephenson* F&Rs for the first time" in the reply brief, leaving Plaintiff without an opportunity to respond. Further, Plaintiff argues that even if his "filing was improperly styled, the Court has discretion to consider the filing rather than strike it," that his filing should be liberally construed, Defendants will suffer no prejudice, and the information "is directly material to correcting a factual misrepresentation …."

## IV. THE PROFERRED SUPPLEMENTAL AUTHORITY

Local Rule 230 concerns supplemental material:

> … After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval except:
>
> **(1) Objection to Reply Evidence**. If new evidence has been submitted with the reply brief, the opposing party may file and serve, no later than seven (7) days after the reply is filed, an Objection to Reply Evidence stating its objections to the new evidence. The Objection to Reply Evidence may not include further argument on the motion.
>
> **(2) Notice of Supplemental Authority**. Any party may file a notice of supplemental authority to bring the Court's attention to a relevant judicial opinion issued after the date that party's opposition or reply was filed. The notice of supplemental authority may contain a citation to the new authority but may not contain additional argument on the motion.

Local Rule 230(m).

The supplemental material proffered by Plaintiff is not appropriate under Local Rule 230(m)(1) because new *evidence* was not submitted with Defendants' reply brief – rather, Defendants presented argument based on citation to *Stephenson* to counter Plaintiff's reliance upon three other district court cases in his opposition. Additionally, this Court finds Plaintiff's

filing is untimely because the related proof of service reflects that Plaintiff served his notice on April 24, 2026 (*see* Doc. 23 at 44), or eight days after Defendants' reply was filed. Moreover, Plaintiff's notice is not appropriate under Local Rule 230(m)(2) because the Objections filed in the *Stephenson* matter do not amount to "a relevant judicial opinion issued after the date that party's opposition or reply was filed" and would effectively amount to prohibited "additional argument on the motion" to dismiss.

In sum, the undersigned concludes Plaintiff's notice of supplemental authority should be stricken. The undersigned will grant Defendants' motion to strike. Hence, the Objections filed in *Stephenson* are not considered by the undersigned in the analysis below.

**V. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Defendants request the Court take judicial notice of the Sexually Violent Predator Conditional Release Program (SVP CONREP) Fact Sheet, contending it is relevant to whether PPG and polygraph assessments are not punitive, but rather further a legitimate governmental interest of preventing the re-offense of sex crimes. The SVP CONREP Fact Sheet is available at https://www.dsh.ca.gov/Treatment/docs/SVP_CONREP_Fact_Sheet.pdf. (*See* Doc. 12-2.) Plaintiff did not object to Defendants' request. (*See* Doc. 14, generally.)

Rule 201 of the Federal Rules of Evidence provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See Daniels-Hall,* 629 F.3d at 998-99 (a court may take judicial notice of "information [that] was made publicly available by government entities" where "neither party disputes the authenticity ... or the accuracy of the information")

Here, the Court takes judicial notice of the SVP CONREP Fact Sheet because it is publicly available on DSH's website and no party disputes its authenticity or accuracy. Fed. R. Evid. 201(b); *Daniels-Hall*, 629 F.3d at 998-99; *Fletcher v. Clendenin*, No. 1:22-cv-01150-JLT-EPG-PC, 2024 WL 281689, at *4-5 (E.D. Cal. Jan. 25, 2024) (recommending judicial notice be taken of DSH Administrative Directive No. 624).

## VI. LEGAL STANDARDS APPLICABLE TO PLAINTIFF'S CLAIMS

***Fifth Amendment: Privilege Against Self-Incrimination***

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. The privilege

> not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). "To plead a Fifth Amendment claim, a plaintiff must allege facts showing: '(1) that the testimony desired by the government carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion.'" *Mitchell v. Garcia*, No. CV 17-3136 DMG (FFM), 2019 WL 4145055, at *2 (C.D. Cal. June 7, 2019) (citing *United States v. Antelope*, 395 F.3d 1128, 1134-35 (9th Cir. 2005) & *United States v. Bahr*, 730 F.3d 963, 965 (9th Cir. 2013)), *R & R adopted*, 2019 WL 4140982 (Aug. 30, 2019). "With regard to element (1), the Fifth Amendment 'may only be invoked when the threat of future criminal prosecution is reasonably particular and apparent.' With regard to element (2), the question is 'whether the government has sought to impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.'" *Id.* (internal and external citations omitted).

***Fourteenth Amendment: Substantive Due Process***

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV. The Due Process Clause protects both substantive rights (*i.e.*, substantive due process) and procedural rights (*i.e.*, procedural due process). *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990).

"Under the Due Process Clause of the Fourteenth Amendment, an individual detained under civil process ... cannot be subjected to conditions that amount to punishment." *King v. Cnty. of Los Angeles*, 885 F.3d 548, 556-57 (9th Cir. 2018) (alteration in original; internal quotation marks omitted) (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)). The Ninth Circuit

has held "that the conditions of confinement for an individual detained under civil process but not yet committed must be tested by a standard at least as solicitous to the rights of the detainee as the standards applied to a civilly committed individual and to an individual accused but not convicted of a crime." *Jones*, 393 F.3d at 932. A condition of confinement is "punitive," such that it will violate substantive due process rights of civil detainee, where it is intended to punish, where it is excessive in relation to its non-punitive purpose, or where it is employed to achieve objectives that could be accomplished in many alternatives and less harsh methods. *Id*. at 933-34.

Under the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)); *see Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (finding state's civil commitment center failed to provide a constitutionally adequate treatment program). "Because the purpose of confinement is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Sharp*, 233 F.3d at 1172 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 233 (1982)).

## VII. DISCUSSION

### A. Plaintiff's Fifth and Fourteenth Amendment Claims Should Not Be Dismissed for Lack of Subject Matter Jurisdiction

As noted above, Defendants contend that Plaintiff has not suffered an injury in fact and thus lacks standing because he does not have a legally protected interest in sex offender treatment, including treatment without PPG and polygraph assessments. In the alternative, Defendants maintain that any alleged injury in fact is based on speculative contingencies because Plaintiff has not been adjudicated and committed to DSH as an SVP and thus is not required to undergo PPG and polygraph assessments.

Here, Plaintiff's complaint alleges DSH "mandates patients in the SOTP, in Modules II and IV, be assessed through a series of polygraph tests and a" PPG test. (Doc. 1 at 6.) Plaintiff further alleges that if a patient refuses to take the assessments, or if a patient fails the assessments,

advancement to the next module will not occur, impeding release and prolonging confinement. (*Id.*) He alleges he was enrolled in SOTP for more than seven years and had completed work in the second module without those assessments. When a facilitator arranged for the Advancement Panel to consider moving Plaintiff to the third module, the panel refused to advance him, noting Plaintiff needed to complete the polygraph and PPG. (*Id.* at 7.) Plaintiff later alleges that if a patient does not take the assessments, completing the SOTP is impeded or delayed, creating "a coercive environment where refusal or failure leads to significant hardship in regaining [one's] liberty." (*Id.* at 11.) Specific to the issue of standing, in his complaint, Plaintiff asserts he has "constitutional standing" and has suffered an actual injury in the form of "ongoing and prolonged deprivation of his liberty due to [DSH]'s unconstitutional policies, including being stalled in treatment and facing years of additional confinement." (*Id.* at 23.) He maintains the injury is "concrete and particularized" and "actual and imminent, not hypothetical" and that he is "currently subjected to these policies and faces immediate consequences for non-compliance or adverse test results." (*Id.*) Plaintiff asserts his injury is "directly traceable to the Defendants' policies of mandating unreliable assessments and penalizing patients based on their results or refusal." (*Id.*) And that a "favorable judicial decision, in the form of the requested declaratory and injunctive relief, would redress this injury by preventing [DSH] from continuing these unconstitutional practices thus ensuring Plaintiff can advance in treatment without being subjected to unreliable and coercive conditions." (*Id.*)

First, the Court is not persuaded by Defendants' argument that Plaintiff lacks a legally protected interest in sex offender treatment because he is a "pretrial SVP." The Court acknowledges Defendants' correct citation to California Welfare and Institutions Code section 6606 in support of the assertion that treatment is required only upon commitment as an SVP. *See* Cal. Welf. & Inst. Code, § 6604(a) (providing that a "person who is committed under this rule *shall be* provided with programming by [DSH] which shall afford the person with treatment for his or her diagnosed mental disorder." (emphasis added). The statute, however, does not speak to those who are not yet committed but are detained under the SVP and who already are

participating in the treatment offered to those committed as SVPs.[1] Here, Plaintiff has been participating in the SOTP for years, plainly has an interest in continuing treatment, and arguably has gained a protected liberty interest in such treatment as a result. Finding otherwise ignores a years-long commitment to potentially obtaining freedom through rehabilitative programming that is ultimately required of an SVP. For those reasons, dismissal for lack of standing is not appropriate.[2] In short, the Court finds, at this stage of the proceedings, that Plaintiff's assertions that he is currently suffering, and continues to suffer, injury in the form of stalled treatment progress relating to the required PPG and polygraph assessments are sufficient to establish a case and controversy for purposes of standing. *Lujan*, 504 U.S. at 560-61; *Lyons*, 461 U.S. at 101.

Next, Defendants argue in the alternative that Plaintiff's alleged injury is speculative because he is not required to undergo the assessments at issue as a pre-adjudicated SVP. Defendants identify the following "speculative contingencies": (1) Plaintiff must lose at trial, be found beyond a reasonable doubt to be an SVP, and be indefinitely committed to DHS; (2) he must undergo PPG and polygraph assessments as part of the SOTP; (3) he must be asked self-incriminating questions; (4) he must make an incriminating statement; (5) the government must decide to use it against him in a criminal proceeding; or (6) he must refuse to answer the self-incriminating questions without intervening procedural safeguards like offers of immunity and privilege; and (7) the refusal must be used to prolong his detention at DSH-Coalinga.

First, the Court finds Defendants' reliance on *Nelsen v. Kings Cnty.*, 895 F.2d 1248 (9th Cir. 1990) inapt as the case is readily distinguishable. In *Nelsen*, the plaintiffs were former residents of an alcohol treatment facility. *Id*. at 1249. Thus, the first distinguishing factor is that in *Nelson* the plaintiffs were no longer residents, whereas here, Plaintiff remains detained in DSH pending the outcome of the SVP trial proceedings, at a minimum. The Ninth Circuit stated: "In

---

[1] As recounted above, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released. *Sharp*, 233 F.3d at 1172; *Ohlinger*, 652 F.2d at 778.

[2] The undersigned acknowledges Defendants' reliance on *Batten v. Shasta County Bd. of Supervisors*, 489 Fed. App'x. 174 (2010), *People v. Cianco*, 109 Cal.App.4th 175 (2003), and *Hubbart v. Superior Court*, 19 Cal.4th 1138 (1999) for the same proposition. As addressed more fully below, the Court is not persuaded by Defendants' argument.

order to reenter the Center, Nelsen and Bullene would have to remain within King County, remain indigent, begin drinking uncontrollably several years after their discharge from the Center (and after they have testified that they are *recovering* alcoholics) commit an alcohol-related offense, be prosecuted for that offense, be convicted, be offered the choice to reenter the Center, make that choice, *and* find that the conditions at the Center were the same as they allegedly were when Nelsen and Bullene were there in 1985 and 1986." *Id*. at 1252. Ultimately, the Ninth Circuit concluded that "the threat of future harm to Nelsen and Bullene is based upon an extended chain of highly speculative contingencies, all of which would have to be fulfilled in order to have the threat of returning to the Center become manifest. The case law plainly demonstrates that we cannot find standing under such circumstances." *Id*.

The undersigned does not find, as Defendants contend, that "Plaintiff's claim depends on 'an extended chain of highly speculative contingencies, all of which would have to be fulfilled' for him to suffer a constitutional injury." Unlike *Nelsen*, here, the contingencies at issue do not require Plaintiff to commit another similar offense, or to be prosecuted for a new offense, or to reenter DSH. In fact, if Plaintiff does not prevail at trial, he will remain at DSH indefinitely as a committed SVP, required to participate in the SOTP he is already participating in, to include PPG and polygraph assessments that Plaintiff alleges involve self-incriminating questions.

For the reasons discussed above, and because at this stage of the proceedings the Court presumes general allegations embrace specific facts to support the claim, the undersigned finds Plaintiff's alleged injury is not speculative. *Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim'") (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). Thus, the undersigned will recommend Defendant's motion to dismiss pursuant to Rule 12(b)(1) for a lack of subject matter jurisdiction be denied.

///

///

///

**B. Plaintiff's Fifth and Fourteenth Amendment Claims Should Not Be Dismissed For Failure to State a Claim**

The Fifth Amendment Claim

Defendants maintain that Plaintiff's Fifth Amendment claim "is fatally flawed" because he does not have a right to treatment as a pre-adjudicated SVP detainee and thus is "not compelled to participate in the SOTP and give an incriminating statement during PPG and polygraph assessments," he has not made an incriminating statement, and no governmental entity has used such a statement against him in a criminal case.

Because the undersigned concludes that Plaintiff appears to have a right to treatment as a pre-adjudicated SVP detainee, *see supra*, the underlying premise of Defendants' argument is unsound.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973);.

Here, the assessments at issue are not voluntary; Plaintiff alleges the PPG and polygraph assessments are mandatory in order to complete the SOTP and allow for consideration of any release from detention. As such, the assessments appear to be compulsory for purposes of the Fifth Amendment. *Lefkowitz*, 414 U.S. at 77; *see Maness v. Meyers*, 419 U.S. 449, 461-62 (1975) (noting that the Fifth Amendment privilege may be asserted if one is "compelled to produce evidence which later *may* be used against him as an accused in a criminal action") (emphasis added); *cf. McKune v. Lile*, 536 U.S. 24, 36 (2002) ("The consequences in question here – transfer to another prison where television sets are not placed in each inmate's cell, where exercise facilities are not readily available, and where work and wage opportunities are more limited – are not one that compel a prisoner to speak about his past crimes despite a desire to remain silent"); *Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272, 288 (1998) ("But this pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled. We therefore hold that the Ohio clemency interview, even on assumptions most favorable to respondent's claim, does not violate the Fifth Amendment privilege against compelled self-incrimination").

The consequence of Plaintiff's election not to participate in PPG or polygraph assessments

as a part of his SOTP treatment is significant. Plaintiff alleges he was denied advancement to the next treatment module and that his progress in SOTP treatment is therefore stalled as a result of the PPG and polygraph requirements. While Plaintiff has not yet been committed as an SVP, he is allowed to participate in SOTP while detained pending a commitment trial and alleges "patients" in SOTP are "mandated" to undergo the PPG and polygraph assessments. Further, were Plaintiff a committed SVP, the PPG and polygraph assessments remain a requirement of treatment and would prevent Plaintiff's completion of mental health treatment and foreclose any realistic opportunity for release. Therefore, the undersigned finds the PPG and polygraph assessments required of participants in the SOTP are official questions put to Plaintiff in informal, civil proceedings "where the answers might incriminate him in future criminal proceedings." *Lefkowitz*, 414 U.S. at 77.

In sum, the undersigned will recommend Defendants' motion to dismiss Plaintiff's Fifth Amendment self-incrimination claim on sufficiency grounds be denied.

<u>The Fourteenth Amendment Claim</u>

Defendants argue Plaintiff has failed to state a cognizable Fourteenth Amendment due process claim because as a pre-adjudicated SVP, he does not have a liberty interest in receiving sex offender treatment. Alternatively, Defendants contend the use of PPG and polygraph assessments does not violate Plaintiff's due process rights because their use furthers a legitimate governmental interest: preventing the future sex crimes.

***Pre-Adjudicated Detainees and Entitlement to Treatment***

As concerns Defendants' argument that pre-adjudication detainees like Plaintiff "are not entitled to sex offender treatment under California law," the undersigned is not persuaded by Defendants' citations to the district court's opinion and Ninth Circuit affirmance in *Batten v. Shasta County Jail*, or to the state court opinions in *People v. Ciancio*, and/or *Hubbart v. Superior Court*. (Doc. 12-1 at 7.)

First, Plaintiff's complaint alleges that Plaintiff is entitled to SOTP treatment as a right arising under the Fourteenth Amendment, not the SVPA or California law. His opposition to the instant motion repeats this assertion. (Doc. 14 at 1 ["This case is not about what California's

SVPA requires. It is about what the United States Constitution demands"].) Like other judges within this district, the undersigned finds Plaintiff's claims concerning the SOTP program are based on the Fourteenth Amendment's Due Process Clause rather than the SVPA, and his status as a pre-adjudicated civil detainee does not subject those claims to dismissal. *See, e.g., Neill v. Clendenin*, No. 1:23-cv-00910-SAB (PC), 2025 WL 3014036, at *3 (E.D. Cal. Oct. 28, 2025) ("Contrary to Defendants' argument, Plaintiff's claims in the operative complaint are based on the Fourteenth Amendment, not the SVPA. Thus, Defendants' argument that SVPA does not provide the Plaintiff a statutory right to treatment is unfounded," addressing misplaced reliance on *Ciancio* and *Hubbart*); *Owens v. Clendenin*, No. 1:23-cv-01056-KES-EPG (PC), 2025 WL 1683821, at *4-5 (E.D. Cal. June 16, 2025) (same).

Next, in *Batten v. Shasta County Bd. of Supervisors*, the Ninth Circuit affirmed the district court's grant of summary judgment, determining "Batten failed to show that he had any right to sex offender treatment," relying in part on *People v. Ciancio*, 109 Cal.App.4th 175 (2003) for its holding there is no mandated pretrial treatment of alleged sexually violent predators awaiting commitment proceeding in California. *Batten*, 489 Fed. App'x 174, 175 (9th Cir. 2012). Nonetheless, in *Ciancio*, the Second District Court of Appeal did not analyze what treatment was required, if any, for pre-adjudication civil detainees following a probable cause determination pursuant to California Welfare and Institutions Code section 6602 under the Due Process clause of the Fourteenth Amendment. *See Neill*, 2025 WL 3014036, at *3; *Owens*, 2025 WL 1683821, at *5. Therefore, while the unpublished memorandum in *Batten* is persuasive authority,[3] it is not binding and the undersigned finds it inapplicable under the fact and circumstances alleged in Plaintiff's complaint.

And in *Hubbart*, the California Supreme Court rejected Hubbart's argument that the Legislature cannot constitutionally provide for the civil confinement of dangerous mentally impaired sexual predators unless the statutory scheme guarantees and provides effective

[3] *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1182 (N.D. Cal. 2004) ("Ninth Circuit Rule 36-3 does not bar a district court from considering the unpublished decisions of other federal district courts; however such decisions are not binding and are at most persuasive authority").

treatment. *Hubbart*, 19 Cal.4th 1138, 1164 (1999). That holding "did not alter the constitutional standard that '[u]nder the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released." *Neill*, 2025 WL 3014036, at *3 (citing *Ohlinger*, 652 F.2d at 778 & *Sharp*, 233 F.3d at 1172); *Owens*, 2025 WL 1683821, at *5 (same).

Thus, the undersigned will recommend that Defendants' motion to dismiss Plaintiff's complaint on the basis that the claims are legally insufficient because Plaintiff is not entitled to sex offender treatment under California law be denied. *E.g., Neill*, 2025 WL 3014036, *4 (finding pre-adjudication SVP detainee's assertions regarding deficiencies in SOTP sufficient to state a claim and recommending motion to dismiss be denied).

***PPG and Polygraph Assessments and Government Interest***

Defendants alternatively argue that the use of PPG and polygraph assessments does not violate Plaintiff's due process rights because their use furthers a legitimate governmental interest in preventing re-offending and thus is not punitive.

Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining facility security, effective management of a detention facility, and ensuring detainee safety. *Bell v. Wolfish,* 441 U.S. 520, 539-40 (1979); *Jones*, 393 F.3d at 932.[4] The rights of individuals who are detained for treatment, not punishment, must be carefully balanced against the state's interests in institutional security and the safety of those housed at the facility. *Youngberg*, 457 U.S. at 319-22.

Here, Defendants' argument relies on the SVP CONREP Fact Sheet. The fact sheet lists a number of "Monitoring tools used in conjunction with sexual offender treatment professionals," including a "Polygraph examination, including both sexual history exams (to obtain a reliable

[4] In *Jones*, the Ninth Circuit identified two presumptions applicable to claims brought by SVPA civil detainees. *See Jones*, 393 F.3d at 934-35; *see also King*, 885 F.3d at 557. First, conditions of confinement are presumed punitive if the conditions are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." *King*, 885 F.3d at 557 (quoting *Jones*, 393 F.3d at 934-35). Second, conditions of confinement are presumed punitive if "an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment." *Id*. (quoting *Jones*, 393 F.3d at 933). If either presumption applies, the burden shifts to the defendant to show that "legitimate, non-punitive interests" justify the conditions of the detainee's confinement and "that the restrictions imposed . . . [are] not 'excessive' in relation to these interests." *Jones*, 393 F.3d at 935.

assessment of the patient's history of sexual behavior), maintenance exams (to assess treatment progress and compliance with the terms and conditions of release), and specific issue exams (to address individual risk relevant concerns)" and "Physiological assessment of sexual (Plethysmography)." (*See* Doc. 12-3 at 4) (https://www.dsh.ca.gov/Treatment/docs/ SVP_CONREP_ Fact_Sheet.pdf, last visited Sept. 18, 2026).

In the Fifth Amendment context, the Supreme Court has stated that "[s]tates have a vital interest in rehabilitating convicted sex offenders," and that "rehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmate's liberty." *McKune*, 536 U.S. at 33, 36.

Here, weighing the exercise of Plaintiff's liberty against DSH's legitimate penological interest in preventing re-offending, the scale tips in Plaintiff's favor at this stage of the proceedings because it is not clear that PPG and polygraph assessments, as monitoring tools "used in conjunction with sex offender treatment professionals," are not punitive. As described, the SVP CONREP Fact Sheet references polygraph examinations involving sexual history, treatment progress, and individualized risks, and references without further description the PPG assessment. Those assessments arguably appear relatively benign. But compared to Plaintiff's allegations, the assessments involve "highly intrusive questionnaires, including the 'Sex Offender Disclosure Questionnaire, Wisconsin Department of Corrections' and the 'Sexual Thoughts and Fantasies Questionnaire Initial.'" (Doc. 1 at 7.) Plaintiff alleges the "'Sex Offender Disclosure Questionnaire' demands detailed information across various sections," including sexual contact with children, other sexually deviant behavior, sex and pain, sexual fantasies, thoughts and images, and any other deviant or sexual behavior not specifically identified in the questionnaire. (*Id.* at 8-10.) Further, Plaintiff contends many of the questions "delve into 'possible crimes that patient has not been convicted of yet,' raising the risk of a 'potential investigation of these acts.'" (*Id.* at 10.) He asserts some of the questions "pertain to 'other mental disorders, such as Exhibitionism, Fetishes, Sadism and other that the patient may not be diagnosed with,' potentially leading to 'a new criminal investigation and new mental disorders the [patient] is not diagnosed with.'" (*Id.* at 11.)

At this stage of the proceedings, the undersigned is unable to find that the restrictions imposed in the SOTP concerning PPG and polygraph assessments are not punitive or not excessive in relation to DSH's interest in preventing re-offending. *Jones*, 393 F.3d at 935. Thus, the undersigned will recommend Defendants' motion be denied on this basis.

**VIII. ORDER AND RECOMMENDATION**

Accordingly, the Court **HEREBY ORDERS** that Defendants' motion to strike Plaintiff's supplemental authority (Doc. 24) is **GRANTED**.

Further, for the reasons given above, the Court **HEREBY RECOMMENDS** that Defendants' motion to dismiss (Doc. 12) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 18, 2026**

UNITED STATES MAGISTRATE JUDGE